**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) NON-ARTERITIC ISCHEMIC OPTIC NEUROPATHY PRODUCTS LIABILITY LITIGATION | MDL NO. 3163<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| DENNIS LEE CAREY AND JANET CAREY,<br><br>Plaintiff,<br>v.<br><br>NOVO NORDISK INC., NOVO NORDISK A/S, AND ELI LILLY AND COMPANY.<br><br>Defendants. | COMPLAINT & JURY DEMAND<br><br>CIVIL ACTION NO: 2:26-cv-8170 |

**COMPLAINT AND JURY DEMAND**

Plaintiff files this Complaint pursuant to the Direct Filing Order and is to be bound by the rights, protections, and privileges, and obligations of the Direct Filing Order and other Orders of the Court. Further, in accordance with the Direct Filing Order, Plaintiff hereby designates the United States District Court for the District of Massachusetts as Plaintiff's venue ("Original Venue"). Plaintiff makes this selection based upon one (or more) of the following factors (check the appropriate box(es)):

_X_ Plaintiff currently resides in Groton, Massachusetts.

_X_ Plaintiff purchased and used Defendant(s)' products in Groton, Massachusetts.

___ The Original Venue is a judicial district in which Defendants reside, and all Defendants

are residents of the State in which the district is located (28 U.S.C. § 1391(b)(1)).

_X_ The Original Venue is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, specifically, (28 U.S.C. § 1391(b)(2)): District of Massachusetts.

___ There is no district in which an action may otherwise be brought under 28 U.S.C. § 1391, and the Original Venue is a judicial district in which Defendants are subject to the Court's personal jurisdiction with respect to this action (28 U.S.C. § 1391(b)(3)).

__ Other reason (please explain): ____________________________________________.

COMES NOW, Plaintiff, DENNIS CAREY and JANET CAREY, by and through the undersigned counsel, and brings this complaint against Defendants Novo Nordisk Inc., Novo Nordisk A/S, and Eli Lilly and Company (hereinafter "Defendants"), for damages suffered by Mr. Carey who was severely injured as a result of Defendants' widespread marketing of its drugs, Trulicity and Ozempic, and his subsequent use of Trulicity and Ozempic, injectable prescription medications for weight loss, and alleges as follows:

## PARTIES

1. At all relevant times hereto, Plaintiffs DENNIS CAREY and JANET CAREY, husband and wife, were residents and citizens of Groton, Massachusetts.

2. Plaintiff was prescribed and took Trulicity and Ozempic as directed by his physicians.

3. As a result of his use of Trulicity and Ozempic, Mr. Carey experienced vision loss secondary to the development of non-arteritic anterior ischemic optic neuropathy (NAION) and suffers severe physical and emotional injuries and radical changes to his lifestyle given his loss of sight.

4. Defendant Novo Nordisk Inc. ("Novo Nordisk") is a Delaware corporation that has its principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey 08536.

5. Defendant Novo Nordisk Inc. is wholly owned by Defendant Novo Nordisk US Commercial Holdings, Inc.

6. Defendant Novo Nordisk A/S is a public limited liability company organized under the laws of Denmark with a principal place of business in Bagsvaerd, Denmark.

7. Defendant Novo Nordisk A/S and its subsidiaries and affiliated named herein are collectively referred to as "the Novo Nordisk Defendants" and "Novo Nordisk".

8. The Novo Nordisk Defendants' website states that "the vast majority of our U.S. injectable diabetes and obesity products are produced and packaged at the Clayton aseptic fill-finish site. Upon information and belief, this refers to Novo Nordisk's manufacturing facility in Clayton, North Carolina, operated by Novo Nordisk Pharmaceutical Industries LP.

9. Defendant Eli Lilly and Company ("Eli Lilly") is an Indiana corporation with a principal place of business at 893 S. Delaware St., Indianapolis, Indiana.

10. Upon information and belief, Defendants failed to warn physicians and the end users of Trulicity and Ozempic of the complications and devastating effects of which the companies knew or should have known, including NAION, which can result in blindness and permanent vision loss.

11. Upon information and belief, Defendants failed to warn the end users of Trulicity and Ozempic of the complications and devastating effects of which the company knew or should have known.

12. Upon information and belief, Defendants' marketing was deceptive and misleading about the true risks associated with the use of Trulicity and Ozempic, risks which the companies

knew or should have known.

## JURISDICTION

13. This Court has subject matter jurisdiction under 28 U.S.C. §1332(a) as the matter in controversy exceeds the value of $75,000, exclusive of interest and costs and is between citizens of different states and/or a foreign state, as Plaintiff is a citizen of the State of Massachusetts and each Defendant is neither incorporated nor has its principal place of business in the State of Massachusetts.

14. This Court has supplemental jurisdiction over the remaining common law and state law claims pursuant to 28 U.S.C. § 1367.

## BACKGROUND

### I. The Development and Approval of Ozempic

15. In the early 1990s, Novo Nordisk researchers discovered that when they injected into rats a chemical compound known as liraglutide—a GLP-1 (glucagon-like peptide-1) agonist—the drug caused the rats to stop eating almost entirely.[1]

16. GLP-1 agonists are a class of medications that can help lower blood sugar levels and promote weight loss.[2] An agonist is a manufactured substance that attaches to a cell receptor and causes the same action as the naturally occurring substance.[3] Thus, GLP-1 agonists work by mimicking a naturally occurring GLP-1 hormone.

[1] https://www.nytimes.com/2023/08/17/health/weight-loss-drugs-obesity-ozempic-Ozempic.html (last visited Sept. 17, 2025)
[2] https://my.clevelandclinic.org/health/articles/13901-glp-1-agonists (last visited Sept. 17, 2025)
[3] *Id.*

17. To describe the process in other words, GLP-1 medications bind to GLP receptors to trigger the effects (or roles) of the GLP-1 hormone. The higher the dose of the GLP-1 agonist, the more extreme the effects.[4]

18. "These rats, they starved themselves," said one Novo Nordisk scientist, Lotte Bjerre Knudsen, in a video series released by the Novo Nordisk Foundation, "so we kind of knew there was something in some of these peptides that was really important for appetite regulation."[5]

19. Later testing in human subjects revealed that those who received an intravenous drip of GLP-1 agonist ate 12% less at a lunch buffet than those who got a placebo.[6]

20. Consequently, Novo Nordisk decided to study liraglutide as not only a diabetes drug which had been shown to lower blood sugars, but also as a drug to treat obesity.[7]

21. Years later, in 2010, liraglutide was approved for the treatment of diabetes by the FDA under Novo Nordisk's brand name Victoza,[8] at which point Novo Nordisk moved forward with studying the drug for weight loss.[9]

22. After clinical trials, in 2014, the FDA approved liraglutide as a daily injectable for treatment of obesity under Novo Nordisk's brand name, Saxenda.[10]

---

[4] *Id.*
[5] https://www.nytimes.com/2023/08/17/health/weight-loss-drugs-obesity-ozempic-Ozempic.html (last visited Sept. 17, 2025).
[6] *Id.*
[7] *Id.*
[8] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2957743/#:~:text=The%20incretin%20mimetic%20liraglutide%20(Victoza,adults%20with%20type%2D2%20diabetes.&text=Liraglutide%20is%20also%20approved%20in%20Europe%20and%20Japan (last visited Sept. 18, 2025).
[9] https://www.nytimes.com/2023/08/17/health/weight-loss-drugs-obesity-ozempic-Ozempic.html (last visited Sept. 17, 2025).
[10] *Id.*

23. Saxenda's effects on weight loss, however, were modest; patients lost about 5% of their weight.[11]

24. In an effort to find ways to make a longer-lasting GLP-1 agonist so patients would not have to inject themselves every day, Novo Nordisk created a new molecule with the chemical name semaglutide.[12]

25. Novo Nordisk branded semaglutide as Ozempic, and on December 5, 2016, the Novo Nordisk Defendant announced submission of Ozempic's new drug application (NDA) to the FDA for regulatory approval of a once-weekly injectable, in 0.5 mg or 1 mg doses, for treatment of Type 2 diabetes. In the announcement, Defendant represented that in clinical trials "once-weekly" Ozempic had a safe and well-tolerated profile, and Defendant represented that the most common adverse event was nausea.[13]

26. On December 5, 2017, the FDA approved the Ozempic application and granted premarket approval as NDA 209637.[14]

27. When Novo Nordisk announced that they had started selling Ozempic in the United States, they touted the medication as a "new treatment option[]" that "addresses the concerns and needs of people with diabetes[.]" Novo Nordisk offered an "Instant Savings Card to reduce co-pays to as low as $25 per prescription for up to two years."

---

[11] *Id.*
[12] *Id.*
[13] https://ml.globenewswire.com/Resource/Download/d2f719e1-d69f-4918-ae7e-48fc6b731183 (last visited Sept. 17, 2025).
[14] https://www.accessdata.fda.gov/Ozempicatfda_docs/appletter/2017/209637s000ltr.pdf (last visited Sept. 17, 2025).

28. In addition to diabetic control, Ozempic also caused 15% weight loss, which was three times the loss caused by its predecessor, Saxenda.[15]

29. Just one year after Ozempic's approval for diabetes, Defendant started a clinical trial in patients who were overweight or suffered from obesity.[16]

30. The results of the trial demonstrated that for participants who were overweight or obese, 2.4 mg of semaglutide, once weekly, plus lifestyle intervention was associated with sustained, clinically relevant reduction in body weight.[17]

31. On March 20, 2019, Defendant submitted a supplemental new drug application (sNDA) for Ozempic 0.5 mg or 1 mg injection, requesting approval to expand its marketing of Ozempic by adding an indication to reduce the risk of major adverse cardiovascular events in adults with type 2 diabetes and established cardiovascular disease.[18] On January 16, 2020, the FDA approved this new indication.[19]

32. By March of 2021, Defendant had completed the clinical trial studying semaglutide for weight loss, and its results were published March 18, 2021.[20]

33. In addition to the results, the published study, which was funded by Defendant, argued: "Obesity is a chronic disease and global public health challenge."[21]

---

[15] https://www.nytimes.com/2023/08/17/health/weight-loss-drugs-obesity-ozempic-Ozempic.html (last visited Sept. 17, 2025).
[16] *Id.*
[17] https://www.nejm.org/doi/full/10.1056/NEJMoa2032183 (last visited Sept. 17, 2025)
[18] https://www.prnewswire.com/news-releases/novo-nordisk-files-for-us-fda-approval-of-oral-semaglutide-for-blood-sugar-control-and-cardiovascular-risk-reduction-in-adults-with-type-2-diabetes-300815668.html (last visited on Sept. 17, 2025).
[19] https://www.accessdata.fda.gov/Ozempicatfda_docs/appletter/2020/209637Orig1s003ltr.pdf (last visited Sept. 17, 2025).
[20] https://www.nejm.org/doi/full/10.1056/NEJMoa2032183 (last visited Sept. 17, 2025)
[21] *Id.*

34. Then, on May 28, 2021, Defendant submitted another sNDA requesting approval for a higher, 2 mg dose of Ozempic injection. On March 28, 2022, the FDA approved this request.[22]

35. In its press release, Defendant represented Ozempic as having "proven safety and efficacy" and Defendant continued to advertise that "it can help many patients lose some weight."[23] As with its prior press releases, Defendant disclosed Important Safety Information and provided links to the Medication Guide and Prescribing Information. However, severe gastrointestinal events, including NAION and gastroenteritis, were not identified as risks. Nor was there any disclosure about risks of vision loss, including NAION.

36. On September 22, 2023, Novo Nordisk added "ileus" under Section 6-3 Postmarketing Experience of the Prescribing Information ("PI" or "label") in a revised Ozempic label.

37. The new label listed ileus as an adverse reaction reported during post-approval use of semaglutide, the active ingredient in Ozempic.[24]

38. On September 6, 2024, the FDA notified Novo Nordisk of new safety information that it determined should be included in the labeling for GLP-1 RAs pertaining to the risk of pulmonary aspiration during general anesthesia or deep sedation.

39. On October 4, 2024, Novo Nordisk submitted a supplemental new drug application (sNDA 209637/S-032) and amendments for Ozempic incorporating the FDA's required safety modifications to the label.

---

[22] https://www.accessdata.fda.gov/Ozempicatfda_docs/appletter/2022/209637Orig1s009ltr.pdf (last visited Sept. 17, 2025).
[23] https://www.prnewswire.com/news-releases/novo-nordisk-receives-fda-approval-of-higher-dose-ozempic-2-mg-providing-increased-glycemic-control-for-adults-with-type-2-diabetes-301512209.html (last visited Sept. 17, 2025).
[24] Ozempic Label (dated 9/22/23), available at https://www.accessdata.fda.gov/drugsatfda__docs/label/2023/209637s0202s0211bl.pdf

40. On November 1, 2024, the FDA provided supplemental approval for sNDA 209637/S-032.[25]

41. No version of the Ozempic label has warned patients or their doctors that taking Ozempic may cause NAION or result in permanent vision loss.

**II. Defendant Creates a Market: Millions Spent on Marketing and Promotion Create a Media Frenzy and Mega Seller**

42. Novo Nordisk was not permitted to market Ozempic for weight loss without FDA




approval for that specific indication,[26] but before Ozempic ever received separate approval for treatment of wight loss, Novo Nordisk had already begun mentioning weight loss in its Ozempic commercials.[27]

43. On July 30, 2018, Novo Nordisk launched its first television ad for Ozempic to the tune of the 1970s hit pop song "Magic" by Pilot, wherein Novo Nordisk advertised that "adults lost on average up to 14 pounds" when taking Ozempic.[28]

[25] FDA Supplement Approval Letter for NDA 209637/S-032 (Ozempic), available at https://www.accessdatafda.gov/drugsatfda__docs/appletter/2024/209637Orig1s)32ltr.pdf

[26] https://www.nytimes.com/2023/08/17/health/weight-loss-drugs-obesity-ozempic-Ozempic.html (last visited Sept. 18, 2025).

[27] *Id.*

[28] *Id.*

44. Over the next five years, Novo Nordisk spent $884,000,000 running television ads in the United States to promote its semaglutides, Ozempic, Ozempic, and its lesser known GLP-1 agonists, Rybelsus, with most advertisements allocated towards Ozempic.[29]

45. Defendant also employed sophisticated use of social media to market Ozempic.

46. On TikTok, the hashtag #Ozempic had 273 million views as of November 22, 2022,[30] and currently has over 1.2 billion views.[31]

47. The hashtag #ozempicjourney has 199.5 million views, as of September 9, 2023, on TikTok.

48. Novo Nordisk partnered directly with Meta and Instagram to run marketing campaigns. One diabetes marketing campaign achieved a dramatic 28% direct engagement rate with their polls.[32] This was a lauded result presented in a case study by Meta.

49. On July 10, 2023, a global media company declared Ozempic as "2023's buzziest drug" and one of the "Hottest Brands, disrupting U.S. culture and industry."[33]

50. Novo Nordisk reportedly spent approximately one hundred million dollars advertising Ozempic last year.[34] Ozempic ranked as the sixth most advertised prescription drug brand in 2022, with a U.S. measured media spend of $181 million, according to Vivvix spending

---

[29] https://medwatch.com/News/Pharma___Biotech/article15680727.ece (last visited Sept. 18, 2023).
[30] https://www.nytimes.com/2022/11/22/well/ozempic-diabetes-weight-loss.html (last visited Sept. 18, 2025).
[31] https://www.tiktok.com/tag/ozempic (last visited on August 1, 2023).
[32] https://business.instagram.com/success/novo-nordisk (last visited Sept. 17, 2025).
[33] https://adage.com/article/special-report-hottest-brands/ozempic-hottest-brands-most-popular-marketing-2023/2500571 (last visited on Sept. 17, 2025).
[34] https://www.newyorker.com/magazine/2023/03/27/will-the-ozempic-era-change-how-we-think-about-being-fat-and-being-thin (last visited Sept. 17, 2025).

data and Pathmatics paid social data as reported in Ad Age Leading National Advertisers 2023.[35]

51. In 2023, over $491 million was spent advertising "diabesity" drugs, including Ozempic and Ozempic.[36]

52. Jimmy Kimmel joked about Ozempic at the Oscars.[37]

53. Howard Stern has joked and discussed Ozempic.[38] Interestingly, Stern notes that the "catchy" theme song "distracts" the listener from actually hearing any of the listed side effects.[39]

54. Novo Nordisk has spent millions of dollars delivering their message to physicians, healthcare providers, and consumers.

55. For example, Novo Nordisk spent over $33,000,000 in 2022 on traditional physician marketing and detailing according to Open Payments Data. [40]

56. In sum, Novo Nordisk promoted the safety, efficacy, and sale of Ozempic in the United States on its websites, in press releases, through in-person presentations, through the drug's label, in print materials, on social media, advocacy groups, lobbying groups, celebrity partnerships, telehealth partnerships, key opinion leaders, and through other public outlets.

57. However, throughout its marketing, Defendant failed to disclose the true serious side effects of Ozempic, including but not limited to hospitalization and death.

### III. Marketing Works: Novo Nordisk's Rampant Promotion Result in Thousands of Prescriptions and Billions in Sales

---

[35] https://adage.com/article/special-report-hottest-brands/ozempic-hottest-brands-most-popular-marketing-2023/2500571?utm_source=exchange&utm_medium=email&utm_campaign=t5687390

[36] https://www.mmm-online.com/home/channel/spending-on-ozempic-Ozempic-surges/

[37] https://www.usatoday.com/story/life/health-wellness/2023/03/13/ozempic-sweeping-hollywood-celebrities-weight-loss/11428801002/ (last accessed Sept. 17, 2025).

[38] https://www.youtube.com/watch?v=QD-nCQn1Ads (last visited on Sept. 17, 2025).

[39] *Id.*

[40] https://openpaymentsdata.cms.gov/company/100000000144 (last visited Sept. 18, 2025)

58. As a result of Novo Nordisk's all-encompassing advertising and promotion efforts, Ozempic is widely prescribed throughout the United States.

59. As of August 10, 2023, Novo Nordisk reported that in the first six months of 2023 sales of Ozempic jumped 50% to more than $3.7 billion.[41]

60. In July of 2021, doctors in the US wrote 62,000 prescriptions a week for Ozempic.[42]

61. It has been reported that the huge demand created by extensive marketing has led to rampant off-label usage and "gaming" the system to allow for insurance coverage.[43]

62. In June 2023, it was reported that new prescriptions for Ozempic had surged by 140 percent from the prior year.[44]

63. This surge has reshaped Denmark's economy as the country has reaped huge profits from the sale of the drug, which is now solely responsible for the country's economic growth.[45]

64. Ozempic has become so popular, Novo Nordisk has recently limited shipment to the US and paused advertising while it addresses shortages.[46]

---

[41] https://www.cnbc.com/2023/09/09/big-pharma-blockbuster-obesity-drug-battle-is-headed-for-100-billion.html#:~:text=Novo%20traded%20earnings%20jabs%20with,to%20more%20than%20%243.7%20billion. (last visited Sept. 18, 2025).

[42] https://www.nytimes.com/2023/08/17/health/weight-loss-drugs-obesity-ozempic-Ozempic.html (last visited on Sept. 18, 2025).

[43] *Id.*

[44] https://www.washingtonpost.com/business/2023/06/11/weight-loss-ozempic-Ozempic-insurance/ (last visited on 8/1/25).

[45] https://www.nytimes.com/2023/08/28/business/denmark-ozempic-Ozempic.html?action=click&pgtype=Article&state=default&module=styln-weight-loss-drugs&variant=show&region=MAIN_CONTENT_1&block=storyline_top_links_recirc (last visited on Sept. 18, 2025).

[46] https://www.theatlantic.com/health/archive/2023/05/ozempic-teen-obesity-treatment-health-promises-risks/674204/ (last visited on Sept. 18, 2025).

**IV. The Approval of Trulicity**

65. On September 18, 2014, the FDA approved Eli Lilly's Biologics License Application ("BLA") for dulaglutide "as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus" to be marketed as Trulicity in "single dose pre-filled syringes and pre-filled pens." As initially approved, the recommended dose for Trulicity was 1.5 mg per week.[47]

66. On April 19, 2019, Eli Lilly submitted supplemental BLA 125469/S-033, requesting approval to expand its marketing of Trulicity by adding an indication for reduction of major cardiovascular events in adults with type 2 diabetes. On February 21, 2020, the FDA approved the request.[48]

67. On November 4, 2019, Eli Lilly submitted BLA 125469/S-036, seeking approval for higher doses (3 mg per week and 4.5 per week) of Trulicity. On September 3, 2020, the FDA approved that request.[49]

68. On May 17, 2022, Eli Lilly submitted BLA 125469/S-051, seeking to add an indication for a new patient population: "pediatric patients 10 years of age and older with type 2 diabetes mellitus." On November 17, 2022, the FDA approved the drug for pediatric use.[50]

---

[47] FDA Approval Letter for BLA 125469/0 (Sept. 18, 2014), available at https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2014/125469Orig1s000ltr.pdf (last visited Nov. 8, 2023).
[48] FDA Approval Letter for BLA 125469/S-033 (Feb. 21, 2020), available at https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2020/125469Orig1s033ltr.pdf (last visited Nov. 8, 2023).
[49] *See News Release: FDA approves additional doses of Trulicity (dulaglutide) for the treatment of type 2 diabetes,* Eli Lilly (Sept. 3, 2020) available at https://investor.lilly.com/news-releases/news-release-details/fda-approves-additional-doses-trulicityr-dulaglutide-treatment (last visited Nov.15, 2023).
[50] FDA Approval Letter for BLA 125469/S-051 (Nov. 17, 2022), available at https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/125469Orig1s051ltr.pdf (last visited Nov. 15, 2023).

**V. Eli Lilly's Marketing and Promotion of Trulicity**

69. At all relevant times, Eli Lilly was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and/or distribute Trulicity.

70. Trulicity has been the top earning product for Eli Lilly for the past several years, with the drug bringing in more than $5.6 billion in revenue in 2022 in the United States alone. The demand for Trulicity is largely driven by Eli Lilly's advertising, which costs the company more than $1 billion annually. Eli Lilly advertises Trulicity through its websites, press releases, in-person presentations, the drug's label, print materials, social media, and other public outlets. Eli Lilly's advertisements tout the health benefits of Trulicity, without warning of the risk of gastroparesis or its sequelae.[51]

71. Upon the approval of Trulicity on September 18, 2014, an Eli Lilly spokesperson indicated that Trulicity "has demonstrated proven glycemic control, only has to be taken once weekly, and comes in an easy-to-use pen."[52] Although a press release accompanying Trulicity's approval acknowledged that "nausea," "vomiting" abdominal pain" were among the most common adverse reactions reported with use of Trulicity, the press release did not indicate that those common adverse reactions were symptoms of gastroparesis or warn of the risk of gastroparesis or its sequelae. Instead, the press release merely indicated that "Trulicity has not been studied in patients with … [pre-existing] gastroparesis."[53]

---

[51] Eli Lilly and Company 2022 Annual Report, available at https://investor.lilly.com/static-files/2f9b7bb1-f955-448d-baa2-c4343d39ee62 (last visited Nov. 15, 2023).

[52] *Lilly's Trulicity (dulaglutide) Now Available in U.S. Pharmacies,* PR Newswire (Nov. 10, 2014), available at https://www.prnewswire.com/news-releases/lillys-trulicity-dulaglutide-now-available-in-us-pharmacies-282138401.html (last visited Nov. 15, 2023).

[53] *News Release: FDA Approves Trulicity (dulaglutide), Lilly's Once-Weekly Therapy for Adults with Type 2 Diabetes,* Eli Lilly (Sept. 18, 2014), available at https://investor.lilly.com/news-releases/news-release-details/fda-approves-trulicitytm-dulaglutide-lillys-once-weekly-therapy (last visited Nov. 15, 2023).

72. Following the FDA's approval of Trulicity in September 2014, Eli Lilly launched its direct-to-consumer ad campaign in 2015, with print and digital ads first appearing in September 2015 and the first Trulicity television ad launching on October 19, 2015.[54]

73. On November 5, 2018, in a press release announcing Trulicity's "superiority in reduction of cardiovascular events," as shown by an internal clinical trial, Eli Lilly acknowledged that "[t]he safety profile of Trulicity … was generally consistent with the GLP-1 receptor agonist class." Although the press release included a section titled "Important Safety Information for Trulicity," the press release did not warn that Trulicity can cause gastroparesis or its sequelae.[55]

74. In a February 21, 2020, press release announcing Trulicity's new indication for reduction of cardiovascular risk, Eli Lilly touted Trulicity's ability to reduce the risk of major adverse cardiovascular events, including heart attack and stroke, even in adults without established cardiovascular disease.[56] In the press release, Eli Lilly again indicated that "Trulicity's safety profile [is] consistent with the GLP-1 receptor agonist (RA) class," but despite warning of certain risks, the press release did not warn of the risk of gastroparesis, or its sequelae, associated with GLP-1RAs.

75. When announcing the approval of higher weekly doses of Trulicity in September 2020, Eli Lilly's press release indicated that "with the 3.0 and 4.5 [mg] doses available, people with type 2 diabetes who use Trulicity can benefit from additional A1C and weight loss as their

---

[54] Beth Snyder Bulik, *One year after FDA nod, Eli Lilly's Trulicity launches first consumer campaign,* Fierce Pharma (Oct. 19, 2015) https://www.fiercepharma.com/dtc-advertising/one-year-after-fda-nod-eli-lilly-s-trulicity-launches-first-consumer-campaign (last visited Nov. 15, 2023).

[55] *News Release: Trulicity (dulaglutide) demonstrates superiority in reduction of cardiovascular events for broad range of people with type 2 diabetes,* Eli Lilly (Nov. 5, 2018), available at https://investor.lilly.com/news-releases/news-release-details/trulicityr-dulaglutide-demonstrates-superiority-reduction (last visited Nov. 15, 2023).

[56] *News Release: Trulicity (dulaglutide) is the first and only type 2 diabetes medicine approved to reduce cardiovascular events in adults with and without established cardiovascular disease,* Eli Lilly (Feb. 21, 2020), available at https://investor.lilly.com/news-releases/news-release-details/trulicityr-dulaglutide-first-and-only-type-2-diabetes-medicine (last visited Nov. 15, 2023).

condition progresses."[57] Despite touting the off-label use of Trulicity for "weight loss," Eli Lilly did not warn of the associated risk of gastroparesis or its sequelae.

76. Around this same time, Robert H. Schmerling, MD, Senior Faculty Editor and Editorial Advisory Board Member at Harvard Health Publishing commented that the actors in the television ads for Trulicity appeared notably thinner than the typical person with type 2 diabetes.[58]

77. In Summer 2021, in conjunction with Eli Lilly's sponsorship of the rescheduled Summer Olympics, Eli Lilly ran extensive television ads for Trulicity featuring Olympic gymnast Laurie Hernandez and her father, who has type 2 diabetes. The ad indicates that treatment with Trulicity is the "right choice" for people with type 2 diabetes but does not mention or warn about gastroparesis or its sequelae.[59]

78. In a similar January 2022 television ad featuring Olympic figure skater Madison Chock and her mother, Eli Lilly again indicated that Trulicity was the "right choice" for people with type 2 diabetes but did not warn that Trulicity can cause gastroparesis or its sequelae.[60]

79. In January 2022, the FDA determined that Eli Lilly's "10,800 Minutes" Instagram ad for Trulicity "ma[de] false or misleading claims and representations about the benefits and risks of Trulicity" and that the ad elicits "a misleading impression regarding the safety and effectiveness of Trulicity" that "minimizes the risks associated with the use of Trulicity." In response to a letter

---

[57] *News Release: FDA approves additional doses of Trulicity (dulaglutide) for the treatment of type 2 diabetes,* Eli Lilly (Sept. 3, 2020) available at https://investor.lilly.com/news-releases/news-release-details/fda-approves-additional-doses-trulicityr-dulaglutide-treatment (last visited Nov.15, 2023).

[58] Robert H. Schmerling, MD, *Harvard Health Ad Watch: A feel-good message about a diabetes drug,* Harvard Health Publishing (Sept. 18, 2020), available at https://www.health.harvard.edu/blog/harvard-health-ad-watch-a-feel-good-message-about-a-diabetes-drug-2020091620961 (last visited Nov. 15, 2023).

[59] *See* Trulicity TV advertisement, available at https://www.youtube.com/watch?v=eVA1vYV980w (last visited Nov. 15, 2023); Beth Snyder Bulik, *Lilly warms up for Olympics with Team USA athletes in ads for Trulicity, Emgality and Verzenio,* Fierce Pharma (July 7, 2021), available at https://www.fiercepharma.com/marketing/lilly-warms-up-for-olympics-team-usa-athletes-ads-for-trulicity-emgality-and-verzenio (last visited Nov. 15, 2023).

[60] *See* Trulicity TV advertisement (Madison Chock), available at https://www.ispot.tv/ad/q3ii/trulicity-shes-got-this-featuring-madison-chock (last visited Nov. 15, 2023).

from the FDA, Eli Lilly temporarily removed the Trulicity Instagram account.[61] The FDA citation is emblematic of Eli Lilly's willingness to mislead and omit important information, focusing on profit over safety, specifically with respect to Trulicity.

80. That same month, it was reported that Trulicity was the most advertised drug on United States television, with Eli Lilly spending an estimated $36.2 million on national television advertisements in January 2022 alone.[62]

81. In another Trulicity television ad that premiered in February 2022, Eli Lilly boasted that Trulicity "can help you lose up to ten pounds," a use for which Trulicity is not indicated, but did not mention the risk of gastroparesis or its sequelae.[63]

82. Similarly, Eli Lilly's promotional website for Trulicity (Trulicity.com) states that people taking Trulicity "lost up to 10 lbs," without disclosing the risk of gastroparesis.[64]

83. By the end of 2022, the market was experiencing shortages of Trulicity due to "high demand" driven by Eli Lilly's advertising.[65]

## VI. Defendants have long known that Trulicity and Ozempic are powerful, dangerous drugs.

84. Defendants knew from both pre-market and post-market research and analytics that Trulicity and Ozempic could cause malnutrition, cyclical vomiting, NAION, gastroenteritis, intestinal obstruction/blockage, ileus, esophageal and bowel injury, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, and intraoperative aspiration.

---

[61] Fraiser Kansteiner, *FDA chides Eli Lilly for 2nd misleading ad in 2 months, this time for diabetes blockbuster Trulicity,* Fierce Pharma (Jan. 25, 2022), available at https://www.fiercepharma.com/marketing/fda-chides-lilly-for-second-misleading-ad-2-months-time-for-diabetes-med-trulicity (last visited Nov. 15, 2023).

[62] Ben Adams, *Eli Lilly's Trulicity dethrones Dupixent, taking January's TV ad spending crown,* Fierce Pharma (Feb. 4, 2022), available at https://www.fiercepharma.com/marketing/sanofi-regeneron-s-dupixent-de-throned-as-lilly-s-trulicity-takes-crown-january-s-biggest (last visited Nov. 15, 2023).

[63] Trulicity TV advertisement ("Father-Son"), available at https://www.ispot.tv/ad/q4Kl/trulicity-father-son (last visited Nov. 15, 2023).

[64] *See* https://www.trulicity.com/what-is-trulicity#what-is-trulicity.

[65] https://www.fiercepharma.com/manufacturing/after-novos-wegovy-supply-woes-lillys-would-be-obesity-rival-tirzepatide-runs-scarce

85. Defendants have repeatedly failed to adequately warn about the known dangerous side effects of Trulicity and Ozempic. This includes malnutrition, cyclical vomiting, NAION, gastroenteritis, intestinal obstruction/blockage, ileus, esophageal and bowel injury, DVT and associated pulmonary embolism, gallbladder problems necessitating surgery, and intraoperative aspiration. All of these conditions can, and have, lead to hospitalization and/or death in patients across America.

86. Some doctors estimate that as many as 10% of patients discontinue use of these drugs due to the severity of side effects.[66]

87. Thousands of adverse event reports have been filed by the public with the FDA Adverse Event Reporting System.[67]

## VII. Development of NAION and Its Sequela

88. Non-arteritic anterior ischemic optic neuropathy (NAION) is a medical condition involving damage to the optic nerve resulting in the loss of vision.

89. NAION is irreversible and permanent.

90. NAION falls within the category of an eye stroke.

91. NAION is untreatable and can lead to permanent blindness.

92. While the precise cause of NAION is unknown, the general belief amongst the medical community is that the condition is caused by insufficient blood supply or ischemia to the optic nerve.

---

[66] https://www.cbsnews.com/news/ozempic-side-effects-weight-loss-drugs-Ozempic-mounjaro-doctors-warn/ (last visited Sept. 18, 2025)

[67] https://www.fda.gov/drugs/questions-and-answers-fdas-adverse-event-reporting-system-faers/april-june-2022-potential-signals-serious-risksnew-safety-information-identified-fda-adverse-event (last visited Sept. 18, 2025)

93. “[T]ransient hypoperfusion of the short posterior ciliary arteries causes acute ischemia to the optic nerve head (ONH), resulting in axonal swelling. This swelling compromises the axoplasmic flow, which subsequently increases the axonal swelling, contributing to the compression of ONH microcirculation, exacerbating the ischemia.”

94. Anterior ischemic optic neuropathy (AION) involves the 1mm segment of the optic nerve head, also known as the optic disc, and results in visible disc swelling.

95. Typically, NAION patients present with acute, painless vision loss in one eye that is often described as blurry or cloudy while 8-12% of patients may have accompanying pain such as a headache or periocular pain.

96. The vision loss may occur over hours to days, but generally NAION patients notice vision loss or even total blindness upon waking in the morning.

97. After glaucoma, NAION is the second most common cause of blindness due to optic nerve damage.

98. Some NAION patients lose complete vision with no recovery in affected eye(s).

99. Reduced or loss of vision has a detrimental impact on a person’s day-to-day life. Many NAION patients cannot drive or have driving restrictions, cannot read or have trouble reading, and may be unable to continue in their line of employment. Being blind in one eye, and certainly both eyes, results in bumps and falls and injuries related to the unseen impacts and accidents.

100. Patients with NAION suffer from blurred or darkened vision obstructing their field of view, as well as loss of color vision and loss of contrast in vision.[68]

---

[68] *Ischemic Optic Neuropathy,* Cleveland Clinic, (last reviewed 6/30/2024), available at https://my.clevelandclinic.org/health/diseaes/ischemic-optic-neuropathy

101. About 15% of patients who have NAION in one eye eventually develop it in their other eye.[69]

102. GLP-1 RAs are treated as an established pharmacologic class (EPC) by the FDA, and the class of drugs shares a similar mechanism of action, similar physiologic effects, and similar chemical structure.

103. It has been known since at least 2016 that the human eye contains GLP-1 receptors.[70]

104. Defendants knew or should have known of the causal association between the use of Ozempic and the risk of developing NAION and its sequelae, but they ignored it.

105. The FDA's Adverse Events Reporting System (FAERS) shows multiple reports of "Optic Ischemic Neuropathy" reported in connection with the use of GLP-1 RAs.

106. The earliest reported Optic Ischemic Neuropathy event associated with any GLP-1 RA occurred in 2012, and the earliest associated with semaglutide specifically was in 2019.[71]

107. A meta-analysis of all clinical trials of GLP-1RA drugs, including Novo Nordisk's own clinical trials, found a non-statistically significant increased risk of optic ischemic neuropathy.[72]

---

[69] *Id.*

[70] 47 Hernández C et al, Topical Administration of GLP-1 Receptor Agonists Prevents Retinal Neurodegeneration in Experimental Diabetes, DIABETES 2016 Jan;65(1):172-87. doi: 10.2337/db15-0443. Epub 2015 Sep 17. PMID: 26384381.

[71] The FAERS database is accessible online at https://www.fda.gov/drugs/questions-and-answers-fdas-adverse-event-reporting-system-faers/fda-adverse-event-reporting-system-faers-public-dashboard.

[72] Silverii GA et al, Glucagon-like peptide 1 (GLP1) receptor agonists and risk for ischemic optic neuropathy. A meta-analysis of randomised controlled trials, Diabetes Obes Metab, 2024 (available as a pre-print manuscript as of November 20, 2024), https://dom-pubs.pericles-prod.literatumonline.com/doi/10.1111/dom.16076.

108. The authors note that optic ischemic neuropathy is rare and may have been underreported in clinical trials, leading to a lower estimated risk.[73]

109. The overall rate of optic ischemic neuropathy was higher in the treatment group than the control group: 5.6 and 3.0 cases per 100,000 patient-years, respectively. The authors also note that "inappropriate use of drugs for inducing weight loss in moderately overweight patients with low cardiovascular risk could be associated with rare, but severe, adverse effects, possibly including NAION.[74]

110. A Novo Nordisk spokesperson acknowledged that cases of NAION, which leads to severe and irreversible vision loss, were identified in Novo Nordisk's clinical trials.[75]

111. Defendants knew or should have known of the risk of NAION with use of Trulicity and Ozempic.

112. Defendants conducted clinical trials and had access to case reports and medical literature that provide Defendants with superior knowledge compared to the general public as to potential risks of its medications.

113. For example, a clinical trial entitled "A Research Study to Compare Two Doses of Semaglutide Taken Once Weekly in People With Type 2 Diabetes (SUSTAIN FORTE)" with

---

[73] Id.
[74] Id.
[75] Kevin Dunleavey, After studies flag possible link between Novo's Ozempic and rare eye disorder, Danish agency calls for probe, Fierce Pharma, (December 17, 2024), available at https://www.fiercepharma.com/pharma/novo-nordisk-faces-new-reports-suggesting-link-between-ozempic-and-blindness (last visited 12/18/2024); See also Naomi Kresge, Ozempic Link to Rare Vision Loss Risk Confirmed in Study, Bloomberg, (December 13, 2024), available at https://www.bloomberg.com/news/articles/2024-12-13/ozempic-link-to-rare-vision-loss-risk-confirmed-in-large-trial?leadSource=uverify%20wall (last visited 12/18/2024).

results first submitted in August 2021, involved a participant who developed optic ischemic neuropathy which was categorized as a serious adverse event.[76]

114. The event occurred within the Semaglutide 2.0 mg dosage group, which included 479 participants, which is significant given the low background incidence of NAION.[77]

115. Clinical observations by astute neuro-ophthalmologists at the Harvard affiliated Massachusetts Eye and Ear ("Mass Eye and Ear") who noted a surge of NAION cases amongst patients on Ozempic led them to conduct a retrospective, matched cohort study of neuro-ophthalmic patients at Mass Eye and Ear, Boston.

116. The study "Risk of Nonarteric Anterior Ischemic Optic Neuropathy in Patients Prescribed Semaglutide", authored by Hathaway *et al.*, involved patients examined in the neuro-ophthalmology clinic between December 1, 2017, and November 30, 2023, and consisted of 17,298 patients, including 16,827 patients over the age of 12, 710 of which had type 2 diabetes (T2D), and 979 were overweight or obese.[78]

117. Of the 710 T2D patients, 194 patients were prescribed semaglutide and 516 were prescribed other non-GLP-1 RA antidiabetic medications.[79]

118. Of the 979 overweight/obese patients, 361 were prescribed semaglutide and 618 were prescribed other non-GLP-1 RA anti-obesity medications.[80]

---

[76] A Research Study to Compare Two Doses of Semaglutide Taken Once Weekly in People With Type 2 Diabetes (SUSTAIN FORTE). ClinicalTrials.gov identifier: NCT03989232. Updated February 13, 2023. Accessed February 18, 2025.
[77] *Id.*
[78] Hathaway JT, Shah MP, Hathaway DB, et al. Risk of Nonarteritic Anterior Ischemic Optic Neuropathy in Patients Prescribed Semaglutide. JAMA Ophthalmol. 2024;142(8):732–739. doi:10.1001/jamaophthalmol.2024.2296
[79] *Id.*
[80] *Id.*

119. Within the T2D study population, NAION occurred in 17 patients in the semaglutide cohort vs. 6 in the non-GLP-1 RA cohort. The Kaplan-Meier survival analysis at 36 months showed a cumulative incidence of NAION of 8.9% (95% CI, 4.5%-13.1%) for the semaglutide cohort vs 1.8% (95% CI, 0%-3.5%) for the nonsemaglutide cohort and the Cox proportional hazards regression model showed a higher NAION risk in the semaglutide cohort vs the nonsemaglutide cohort (HR, 4.28; 95% CI, 1.62-11.29; *P* < .001; concordance coefficient = 0.84).[81]

120. Within the overweight/obese cohort, NAION occurred in 20 patients in the semaglutide cohort vs. 3 in the non-GLP-1 RA cohort. The Kaplan-Meier survival analysis at 36 months showed a cumulative incidence of NAION of 6.7% (95% CI, 3.6%-9.7%) for the semaglutide cohort vs 0.8% (95% CI, 0%-1.8%) for the nonsemaglutide cohort and the Cox proportional hazards regression model showed a higher NAION risk in the semaglutide cohort vs the nonsemaglutide cohort (HR, 7.64; 95% CI, 2.21-26.36; P < .001; concordance correlation coefficient = 0.86).[82]

121. The primary outcome of the Hathaway *et al.* study is that use of Ozempic is associated with an increased risk of NAION. "The relatively high HRs (4.28 and 7.64 for our T2D and overweight or obese cohorts, respectively) identified by our Cox regression analyses reveal a substantially increased risk of NAION among individuals prescribed semaglutide relative to those prescribed other medications to treat T2D and obesity or overweight."[83]

122. Acknowledging the pathogenesis or cause of NAION remains unknown. The authors did not determine the mechanism in which semaglutide causes NAION, however, it was

---

[81] *Id.*
[82] *Id.*
[83] *Id.*

hypothesized that expression of the GLP-1 receptor in the optic nerve and GLP-1 RA–induced enhanced sympathetic nervous system activity might influence optic nerve head perfusion and potentially increase the risk of NAION.[84]

123. A meta-analysis of all clinical trials of GLP-1 receptor drugs, including Defendants' own clinical trials, found a non-statistically increased risk of optic ischemic neuropathy.[85] Because optic ischemic neuropathy is rare, the authors note there may have been underreporting in the clinical trials, leading to a lower estimated risk.[86] However, the study concluded the overall rate of optic ischemic neuropathy was higher in the GLP1-RA group compared to the placebo group: 5.6 and 3.0 cases per 100,000 patient-years, respectively which is nearly a doubling of the risk.[87]

124. On December 11, 2024, a pre-print of an article entitled "Use of semaglutide and risk of non-arteritic anterior ischemic optic neuropathy: A Danish- Norwegian cohort study", found an association between use of semaglutide for type 2 diabetes.[88]

125. This cohort study compared the risk of NAION among individuals with type 2 diabetes using semaglutide compared to those using sodium-glucose co-transporter 2 inhibitors (SGLT-2s), another diabetes medication.[89] The authors concluded there is "an association between use of semaglutide for type 2 diabetes and risk of NAION, with a more than two-fold increased

---

[84] *Id.*
[85] Silverii GA, Pala L, Cresci B, Mannucci E. Glucagon-like peptide 1 (GLP1) receptor agonists and risk for ischemic optic neuropathy: A meta-analysis of randomised controlled trials. *Diabetes Obes Metab*. 2025; 27(2): 1005-1009. doi:10.1111/dom.16076
[86] *Id.*
[87] *Id.*
[88] Simonsen E, Lund LC, Ernst MT, et al. Use of semaglutide and risk of non-arteritic anterior ischemic optic neuropathy: A Danish–Norwegian cohort study. Published online December 11, 2024. doi:10.1101/2024.12.09.24318574
[89] *Id.*

hazard ratio."[90]

126. In a registry-based prospective cohort study identifying 424,152 patients diagnosed with type 2 diabetes in Denmark between December 1, 2018, and December 31, 2023,[91] 106,454 of these patients were exposed to semaglutide and 67 developed NAION.[92]

127. "Exposure to once weekly semaglutide was followed by 67 events of NAION during 294,395 years of observation as compared to 151 events during the 1,620,725 years of observation for non-exposed."[93]

128. The study concluded use of semaglutide "more than doubles the risk of NAION, even when multiple other factors have been taken into account."[94]

129. Interestingly, the study also observed that "after the introduction of once-weekly semaglutide in Denmark in November 2018, the annual number of first-time NAION episodes reached an all-time high for the years 2019-2023.[95]

130. Due to the findings of the two studies out of Denmark, as of January 17, 2025, the Pharmacovigilance Risk Assessment Committee (PRAC) of the Danish Medicines Agency has required Novo Nordisk to review and submit available data related to semaglutide and NAION. The PRAC will review and determine if a label change is warranted or if other risk minimization efforts should be pursued.[96]

---

[90] *Id.*
[91] Grauslund J, Taha AA, Molander LD, et al. Once-weekly semaglutide doubles the five-year risk of nonarteritic anterior ischemic optic neuropathy in a Danish cohort of 424,152 persons with type 2 diabetes. *Intl. Journal of Retina and Vitreous*. 2024;10(1):97. doi:10.1186/s40942-024-00620-x
[92] *Id.*
[93] *Id.*
[94] *Id.*
[95] *Id.*
[96] https://laegemiddelstyrelsen.dk/en/news/2024/suspicion-of-rare-eye-condition-from-ozempic-use-to-be-investigated-further/

131. In response, Novo Nordisk has acknowledged cases of NAION were identified within their clinical trials.[97]

132. A recent case series published by Katz *et al.*, "Ophthalmic Complications Associated With the Antidiabetic Drugs Semaglutide and Tirzepatide," also examined nine patients taking GLP1-RA medications who had experienced ophthalmologic complications. Of the nine patients, seven developed NAION.[98]

133. The Katz article included a report of a woman with type 2 diabetes taking insulin and semaglutide and evidence of positive challenge and rechallenge with semaglutide.[99]

134. A study published on April 7, 2025, analyzing FDA Adverse Event reports indicates increased reports of vision impairment linked to semaglutide use. Compared to other diabetes and weight loss medications, users of semaglutide showed "significantly higher" reports of vision impairment.[100]

135. Despite the growing number of articles, reports, and an investigation by PRAC of the Danish Medicines Agency, Defendants still provides no warnings about the dangerous side effect of NAION in conjunction with use of Trulicity and Ozempic.

---

[97] https://www.fiercepharma.com/pharma/novo-nordisk-faces-new-reports-suggesting-link-between-ozempic-and-blindness

[98] Katz BJ, Lee MS, Lincoff NS, et al. Ophthalmic Complications Associated With the Antidiabetic Drugs Semaglutide and Tirzepatide. *JAMA Ophthalmol*. Published online January 30, 2025. doi:10.1001/jamaophthalmol.2024.6058

[99] *Id.*

[100] Massy, et al. Increased vision impairment reports linked to semaglutide: analysis of FDA adverse event data, BMC Medicine (2025) 23:203, available at https://bmcmedicine.biomedcentral.com/articles/10.1186/s12916-025-04031-z.

**VIII. Defendants' Continuing Failure to Disclose the Risk of NAION and its Sequala**

136. On June 6, 2025 the European Medicines Agency (EMA) recommended that the product information for semaglutide medicines include NAION as a side effect.[101]

137. To date, the Trulicity and Ozempic warning labels are still devoid of any mention of NAION.

138. Furthermore, Defendants have failed to take any steps to otherwise warn the medical community, particularly physicians within the ophthalmologic community, to encourage a baseline eye exam prior to starting Trulicity and/or Ozempic, monitoring of patients while on the medications, advising patients to cease use of the medications if they develop symptoms consistent with NAION, or after the fact as to not risk the potential for injury in the other eye.

139. Nothing was or is stopping Defendants from adding a warning regarding the risk of NAION. Defendants could have at any time made "moderate changes" to the labels.

140. Specifically, Defendants could have filed a "Changes Being Effected" ("CBE") supplement under Section 314.70(c) of the FDCA to make "moderate changes" to Trulicity and Ozempic and/or Trulicity's and Ozempic's labels without any prior FDA approval.

141. Examples of moderate label changes that can be made via a CBE supplement explicitly include changes "to reflect newly acquired information" in order to "add or strengthen a contraindication, warning, precaution, or adverse reaction." By definition and by regulation, such changes to add a warning based on newly acquired information—such as that imparted by newly emerging literature like the litany of studies cited above—are considered a "moderate change." § 340.70(c)(6)(iii).

[101] https://www.ema.europa.eu/en/news/prac-concludes-eye-condition-naion-very-rare-side-effect-semaglutide-medicines-ozempic-rybelsus-Ozempic

142. On July 3, 2024, the Journal of the American Medical Association ("JAMA") – Ophthalmology published a study suggesting an association between semaglutide and NAION. The study, which evaluated data from December of 2017 through November of 2023, showed that patients with type 2 diabetes taking semaglutide had a more than three times greater risk of developing NAION than those taking non-GLP-1 RA medications. For patients taking semaglutide for overweight/obesity indications, the risk of developing NAION was nearly seven times greater than non-GLP-1 RA medications.[102]

143. The JAMA study referenced a potential causal mechanism, proposing that "expression of the GLP-1 receptor in the human optic nerve and GLP-1 RA induced enhanced sympathetic nervous system activity might influence optic nerve head perfusion and potentially increase the risk of NAION."[103]

144. The FDA's Adverse Events Reporting System (FAERS) shows multiple reports of "Optic Ischaemic Neuropathy" reported in connection with use of GLP-1RAs. The earliest reported Optic Ischaemic Neuropathy event associated with any GLP-1RA occurred in 2012, and the earliest associated with semaglutide specifically was in 2019.[104]

---

[102] Specifically, the study showed a cumulative incidence of NAION of 8.9% in type 2 diabetes patients taking semaglutide, compared to only 1.8% for patients not taking GLP-1RA medications, with a hazard ratio of 4.28. For overweight/obese patients, the cumulative incidence of NAION was 6.7% for patients taking semaglutide, compared to only 0.8% for those not taking GLP-1RAs, with a hazard ratio of 7.64. Jimena Tatiana Hathaway, et al., Risk of Nonarteritic Anterior Ischemic Optic Neuropathy in Patients Prescribed Semaglutide, JAMA OPHTHALMOLOGY 2024;142(8):732-739 (published online July 3, 2024), available at https://jamanetwork.com/journals/jamaophthalmology/fullarticle/2820255 (last visited 12/17/2024).

[103] *Id.*

[104] The FAERS database is accessible online at https://www.fda.gov/drugs/questions-and-answers-fdas-adverse-event-reporting-system-faers/fda-adverse-event-reporting-system-faers-public-dashboard.

## PARTY PLAINTIFF

145. Plaintiff DENNIS CAREY is a resident of the state of Massachusetts and is currently 61 years old.

146. Upon information and belief, Plaintiff was prescribed Trulicity and Ozempic and used Trulicity and Ozempic from approximately August of 2020 to February of 2022 and March of 2023 to February of 2024, respectively.

147. Plaintiff experienced sudden blurred vision, and following medical work up and testing, he was formally diagnosed with NAION in November of 2022 and December of 2023.

148. As a result of Defendants' actions and inactions, Plaintiff suffers from severe vision loss, which impacts his activities of daily living, including his ability to work. He seeks damages associated with these injuries.

149. Mr. Carey suffered a significant loss of visual acuity.

150. His eyesight loss is permanent.

151. At all times material to the above, the Trulicity and Ozempic labels failed to adequately warn Mr. Carey and his medical providers of the true risks of taking Trulicity and Ozempic.

152. At all times material to the above, the marketing and advertising for Trulicity and Ozempic failed to adequately warn Mr. Carey and his medical providers of the true risks of taking Trulicity and Ozempic.

153. His life is forever changed because of his usage of Trulicity and Ozempic.

154. Mr. Carey will never see clearly again as a result of his usage of Trulicity and Ozempic.

155. Defendants knew or should have known that use of Trulicity and Ozempic could lead to severe and debilitating injuries suffered by Plaintiff and numerous other patients.

156. Defendants continue to downplay the risk of NAION and have not changed the labels for Trulicity and Ozempic or provided any warnings to the public and medical community.

157. Defendants' Trulicity and Ozempic were at all times utilized and prescribed in a manner foreseeable to Defendants.

158. Plaintiff used Trulicity and Ozempic, and did not misuse, or alter Trulicity and Ozempic in an unforeseeable manner.

159. Through its affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiff and his physicians the true and significant risks associated with these medications.

160. As a result of Defendants' actions, Plaintiff and his physicians were unaware, and could not have reasonably known or learned through reasonable diligence, that Plaintiff would be exposed to the risks identified in this Complaint and that those risks were the direct and proximate result of Defendants' conduct.

161. As a direct result of being prescribed and using Trulicity and Ozempic, Plaintiff has been permanently and severely injured, having suffered serious consequences.

162. As a direct and proximate result of his Trulicity and Ozempic use, Plaintiff suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress, loss of earnings, loss of ability to earn money and other economic losses including past and future medical expenses.

163. Plaintiff diligently investigated the potential cause of these injuries, but their relationship to Trulicity and Ozempic was not discovered, and through reasonable care and

diligence could not have been discovered, until a date within the applicable statute of limitations for filing Plaintiff's claims.

164. Had Plaintiff and/or Plaintiff's physicians known of the true risks of NAION associated with the use of Trulicity and Ozempic, Plaintiff and/or Plaintiff's physicians would not have used the medication and would have chosen a different option for the treatment of his weight loss.

165. Plaintiff's life is forever changed as a result of Defendants' actions and inactions.

## FIRST CAUSE OF ACTION
## STRICT LIABILITY - FAILURE TO WARN
## AGAINST ALL DEFENDANTS

166. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in paragraphs 1 through 165, with the same force and effect as if more fully set forth herein.

167. At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Trulicity and Ozempic that was used by Plaintiff.

168. Trulicity and Ozempic were expected to and did reach the usual consumers, handlers, and persons coming into contact with said products without substantial change in the condition in which they were produced, manufactured, sold, distributed, and marketed by Defendants.

169. At all relevant times, and at the times Trulicity and Ozempic left Defendants' control, Defendants knew or should have known that Trulicity and Ozempic were unreasonably dangerous because they did not adequately warn of the risk of NAION and its sequelae, especially

when used in the form and manner as provided by Defendants.

170. Despite the fact that Defendants knew or should have known that Trulicity and Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Trulicity and Ozempic to consumers, including Plaintiff, without adequate warnings.

171. Despite the fact that Defendants knew or should have known that Trulicity and Ozempic caused unreasonably dangerous injuries, Defendants continued to market Trulicity and Ozempic to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

172. Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

173. At all relevant times, given its increased safety risks, Trulicity and Ozempic were not fit for the ordinary purpose for which they were intended.

174. At all relevant times, given its increased safety risks, Trulicity and Ozempic did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiff.

175. Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Trulicity and Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries, such as NAION and its sequelae.

176. At all relevant times, Plaintiff was using Trulicity and Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to aid weight loss.

177. The Trulicity and Ozempic designed, researched, manufactured, tested, advertised,

promoted, marketed, sold, and distributed by Defendants were defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous injuries, including NAION and its sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

178. The Trulicity and Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including NAION and its sequalae, as well as other severe and permanent health consequences from Trulicity and Ozempic, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their product, Trulicity and Ozempic.

179. The label for Trulicity and Ozempic were inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Trulicity and Ozempic, including the increased risk of NAION and its sequelae.

180. The label for Trulicity and Ozempic were inadequate because they did not warn and/or adequately warn that Trulicity and Ozempic had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae.

181. The label for Trulicity and Ozempic were inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Trulicity and Ozempic.

182. The label for Trulicity and Ozempic were inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did

not accurately or unambiguously reflect the scope and nature of symptoms or severity of the side effects.

183. The label for Trulicity and Ozempic were inadequate because they did not state with sufficient specificity the increased risk of NAION and its sequelae causally associated with Trulicity and Ozempic.

184. Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Trulicity and Ozempic, including the increased risk of NAION and its sequelae.

185. Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn that Trulicity and Ozempic had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae.

186. Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

187. Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

188. Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risks of NAION and its sequalae, which are causally associated with Trulicity and Ozempic, then the prescribing physician(s) would not have prescribed Trulicity and Ozempic and/or would have provided Plaintiff with adequate warnings regarding the dangers of Trulicity and Ozempic so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of

Trulicity and Ozempic.

189. Upon information and belief, had Plaintiff's prescribing physician(s) been warned that Trulicity and Ozempic had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae, the prescribing physician(s) would not have prescribed Trulicity and Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Trulicity and Ozempic so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Trulicity and Ozempic.

190. If Plaintiff had been warned of the increased risks of NAION and its sequelae, which are causally associated with Trulicity and Ozempic, then Plaintiff would not have used Trulicity and Ozempic and/or suffered from NAION and its sequelae.

191. If Plaintiff had been warned that Trulicity and Ozempic had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequalae, then Plaintiff would not have used Trulicity and Ozempic and/or suffered NAION and its sequelae.

192. If Plaintiff had been warned of the increased risks of NAION and its sequelae, which is causally associated with Trulicity and Ozempic, then Plaintiff would have informed Plaintiff's prescribers that Plaintiff did not want to take Trulicity and Ozempic.

193. Upon information and belief, if Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Trulicity and Ozempic due to the risks of NAION and its sequelae, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Trulicity and Ozempic.

194. By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Trulicity and Ozempic.

195. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed defective products that created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

196. Defendants' inadequate warnings for Trulicity and Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

197. Said inadequate warnings for Defendants' drugs Trulicity and Ozempic were a substantial factor in causing Plaintiff's injuries.

198. As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, including NAION and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

199. As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION
## NEGLIGENT FAILURE TO WARN
## AGAINST ALL DEFENDANTS

200. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in paragraphs 1 through 165, with the same force and effect as if more fully set forth herein.

201. Massachusetts law imposes a duty on producers, manufacturers, distributors, lessors, and sellers of a product to exercise all reasonable care when producing, manufacturing, distributing, leasing, and selling their products.

202. At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Trulicity and Ozempic that were used by Plaintiff.

203. Trulicity and Ozempic were expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which they were produced, manufactured, sold, distributed, and marketed by Defendants.

204. At all relevant times, and at the times Trulicity and Ozempic left Defendants' control, Defendants knew or should have known that Trulicity and Ozempic were unreasonably dangerous because they did not adequately warn of the risk of NAION and its sequelae, especially when used in the form and manner as provided by Defendants.

205. Despite the fact that Defendants knew or should have known that Trulicity and Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Trulicity and Ozempic to consumers, including Plaintiff, without adequate warnings.

206. Despite the fact that Defendants knew or should have known that Trulicity and Ozempic caused unreasonably dangerous injuries, Defendants continued to market Trulicity and Ozempic to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

207. Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set

forth herein.

208. At all relevant times, given its increased safety risks, Trulicity and Ozempic were not fit for the ordinary purpose for which they were intended.

209. At all relevant times, given its increased safety risks, Trulicity and Ozempic did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiff.

210. Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Trulicity and Ozempic into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries, such as NAION and its sequelae.

211. At all relevant times, Plaintiff was using Trulicity and Ozempic for the purposes and in a manner normally intended—namely, as an adjunct to diet and exercise to aid weight loss.

212. The Trulicity and Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous injuries, including NAION and its sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

213. The Trulicity and Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including NAION and its sequalae, as well as other severe and permanent health consequences from Trulicity and Ozempic, they failed to provide adequate

warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their product, Trulicity and Ozempic.

214. The label for Trulicity and Ozempic were inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Trulicity and Ozempic, including the increased risk of NAION and its sequelae.

215. The label for Trulicity and Ozempic were inadequate because they did not warn and/or adequately warn that Trulicity and Ozempic had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae.

216. The label for Trulicity and Ozempic were inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Trulicity and Ozempic.

217. The label for Trulicity and Ozempic were inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately or unambiguously reflect the scope and nature of symptoms or severity of the side effects.

218. The label for Trulicity and Ozempic were inadequate because they did not state with sufficient specificity the increased risk of NAION and its sequelae causally associated with Trulicity and Ozempic.

219. Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Trulicity and Ozempic, including the increased risk of NAION and its sequelae.

220. Communications made by Defendants to Plaintiff and Plaintiff's prescribing

physician(s) were inadequate because Defendants failed to warn and/or adequately warn that Trulicity and Ozempic had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae.

221. Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

222. Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

223. Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risks of NAION and its sequalae, which are causally associated with Trulicity and Ozempic, then the prescribing physician(s) would not have prescribed Trulicity and Ozempic and/or would have provided Plaintiff with adequate warnings regarding the dangers of Trulicity and Ozempic so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Trulicity and Ozempic.

224. Upon information and belief, had Plaintiff's prescribing physician(s) been warned that Trulicity and Ozempic had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae, the prescribing physician(s) would not have prescribed Trulicity and Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Trulicity and Ozempic so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Trulicity and Ozempic.

225. If Plaintiff had been warned of the increased risks of NAION and its sequelae, which are causally associated with Trulicity and Ozempic, then Plaintiff would not have used Trulicity and Ozempic and/or suffered from NAION and its sequelae.

226. If Plaintiff had been warned that Trulicity and Ozempic had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequalae, then Plaintiff would not have used Trulicity and Ozempic and/or suffered NAION and its sequelae.

227. If Plaintiff had been warned of the increased risks of NAION and its sequelae, which is causally associated with Trulicity and Ozempic, then Plaintiff would have informed Plaintiff's prescribers that Plaintiff did not want to take Trulicity and Ozempic.

228. Upon information and belief, if Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Trulicity and Ozempic due to the risks of NAION and its sequelae, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Trulicity and Ozempic.

229. By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Trulicity and Ozempic.

230. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed defective products that created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

231. Defendants' inadequate warnings for Trulicity and Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

232. Said inadequate warnings for Defendants' drugs Trulicity and Ozempic were a substantial factor in causing Plaintiff's injuries.

233. As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, including NAION and its sequelae, which resulted in other severe

and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

234. As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## THIRD CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY
## AGAINST ALL DEFENDANTS

235. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in paragraphs 1 through 165, with the same force and effect as if more fully set forth herein.

236. At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have acquired the Defendants who designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Trulicity and Ozempic, which were used by Plaintiff as hereinabove described.

237. At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Trulicity and Ozempic were safe as an adjunct to diet and exercise to aid weight loss.

238. The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Trulicity and Ozempic's label, websites, advertisements, promotional materials, and through other statements.

239. As a result of Defendants' express warranties, Plaintiff's prescribing physician(s) were induced to prescribe Trulicity and Ozempic to Plaintiff, and Plaintiff was induced to use Trulicity and Ozempic.

240. At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Trulicity and Ozempic based upon their express warranties.

241. At all relevant times, Defendants reasonably anticipated and expected that prescribing physicians, such as Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Trulicity and Ozempic based upon their express warranties.

242. At all relevant times, Defendants knew or should have known that Trulicity and Ozempic were unreasonably dangerous because of the increased risk of NAION and its sequelae, especially when the drugs were used in the form and manner as provided by Defendants.

243. At all relevant times, Defendants knew or should have known that Trulicity and Ozempic had not been sufficiently and/or adequately tested for safety.

244. The unreasonably dangerous characteristics of Trulicity and Ozempic were beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drugs' characteristics.

245. The unreasonably dangerous characteristics of Trulicity and Ozempic were beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physician as to the drugs' characteristics.

246. At the time Trulicity and Ozempic left Defendants' control, Trulicity and Ozempic did not conform to Defendants' express warranties because Trulicity and Ozempic were not safe to use as an adjunct to diet and exercise to aid weight loss, in that the drugs were causally associated

with increased risks of NAION and its sequelae.

247. The express warranties made by Defendants regarding the safety of Trulicity and Ozempic were made with the intent to induce Plaintiff to use the product and/or Plaintiff's prescribing physician(s) to prescribe the product.

248. Defendants knew and/or should have known that by making the express warranties to Plaintiff and/or Plaintiff's prescribing physician(s), it would be the natural tendency of Plaintiff to use Trulicity and Ozempic and/or the natural tendency of Plaintiff's prescribing physician(s) to prescribe Trulicity and Ozempic.

249. Plaintiff and Plaintiff's prescribing physician(s), as well as members of the medical community, relied on the express warranties of Defendants identified herein.

250. Had Defendants not made these express warranties, Plaintiff would not have used Trulicity and Ozempic, upon information and belief, Plaintiff's prescribing physician(s) would not have prescribed Trulicity and Ozempic.

251. Plaintiff's injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

252. Plaintiff's injuries and damages arose from a reasonably anticipated use of Trulicity and Ozempic by Plaintiff.

253. Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

254. As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous injuries including NAION and its sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or

medications, and fear of developing any of the above-named health consequences.

255. By reason of the foregoing, Plaintiff has been severely and permanently injured and will require more constant and continuous medical monitoring and treatment than prior to Plaintiff's use of Defendants' drugs, Trulicity and Ozempic.

256. As a result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**AGAINST ALL DEFENDANTS**

257. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in paragraphs 1 through 165, with the same force and effect as if more fully set forth herein.

258. At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Trulicity and Ozempic drugs used by Plaintiff.

259. Trulicity and Ozempic were expected to and did reach the usual consumers, handlers, and persons encountering said products without substantial change in the condition in which they were produced, manufactured, sold, distributed, and marketed by the Defendants.

260. At all relevant times, Defendants impliedly warranted to Plaintiff, Plaintiff's prescribing physician(s), and the medical community that Trulicity and Ozempic were of merchantable quality and safe and fit for its ordinary purposes.

261. At all relevant times, Defendants knew or should have known that Trulicity and Ozempic were unreasonably dangerous because of the increased risk of NAION and its sequelae, especially when the drugs were used in the form and manner as provided by Defendants.

262. At all relevant times, Defendants knew or should have known that Trulicity and Ozempic had not been sufficiently and/or adequately tested for safety.

263. At the time Trulicity and Ozempic left Defendants' control, they did not conform to Defendants' implied warranty and were unfit for its ordinary purposes because Defendants failed to provide adequate warnings of the drugs' causal association with increased risk of NAION and its sequelae.

264. At all relevant times, Defendants reasonably anticipated and expected that prescribing physician(s), such as Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Trulicity and Ozempic for use by their patients to aid weight loss.

265. At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Trulicity and Ozempic for its ordinary purposes.

266. Despite the fact that Defendants knew or should have known that Trulicity and Ozempic causes unreasonably dangerous injuries, such as NAION and its sequelae, Defendants continued to market, distribute, and/or sell Trulicity and Ozempic to consumers, including Plaintiff, without adequate warnings.

267. The unreasonably dangerous characteristics of Trulicity and Ozempic were beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drugs' characteristics.

268. The unreasonably dangerous characteristics of Trulicity and Ozempic were beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physicians as to the drugs' characteristics.

269. Plaintiff reasonably relied on Defendants' implied warranty of merchantability relating to Trulicity and Ozempic's safety and efficacy.

270. Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether Trulicity and Ozempic were of merchantable quality and safe and fit for its intended use.

271. Upon information and belief Plaintiff's prescribing physician(s) relied on Defendants' implied warranty of merchantability and fitness for the ordinary use and purpose relating to Trulicity and Ozempic.

272. Upon information and belief, Plaintiff's prescribing physician(s) reasonably relied upon the skill and judgment of Defendants as to whether Trulicity and Ozempic were of merchantable quality and safe and fit for the drugs' intended use.

273. Had Defendants not made these implied warranties, Plaintiff would not have used Trulicity and Ozempic, upon information and belief, Plaintiff's prescribing physician(s) would not have prescribed Trulicity and Ozempic, and/or would have altered their prescribing practices and/or would have provided Plaintiff with adequate warnings regarding the dangers of Trulicity and Ozempic to allow Plaintiff to make an informed decision regarding Plaintiff's use of Trulicity and Ozempic.

274. Defendants herein breached the aforesaid implied warranty of merchantability because the drugs Trulicity and Ozempic were not fit for the drugs' intended purposes.

275. Defendants' breaches of implied warranty of merchantability were a substantial factor in causing Plaintiff's injuries.

276. As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous injuries including NAION and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

277. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**FIFTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**GAINST ALL DEFENDANTS**

278. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in paragraphs 1 through 165, with the same force and effect as if more fully set forth herein.

279. At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Trulicity and Ozempic, which were used by Plaintiff as hereinabove described.

280. At all relevant times, Defendants knew or should have known that Trulicity and Ozempic had not been adequately and/or sufficiently tested for safety.

281. At all relevant times, Defendants knew or should have known that Trulicity and Ozempic were unreasonably dangerous because of the increased risk of NAION and its sequelae, especially when the drugs were used in the form and manner as provided by Defendants.

282. Defendants had a duty to disclose material information about Trulicity and Ozempic to Plaintiff and Plaintiff's prescribing physician(s), namely that Trulicity and Ozempic is causally associated with increased risk of NAION and its sequelae, because Defendants have superior knowledge of the drugs and its dangerous side effects, this material information is not readily available to Plaintiff or Plaintiff's prescribing physician(s) by reasonable inquiry, and Defendants knew or should have known that Plaintiff and Plaintiff's prescribing physician(s) would act on the basis of mistaken knowledge.

283. Nonetheless, Defendants consciously and deliberately withheld and concealed from Plaintiff's prescribing physician(s), Plaintiff, the medical and healthcare community, and the general public this material information.

284. Although the Trulicity and Ozempic label lists nausea, vomiting, diarrhea, abdominal pain, and constipation as common adverse reactions reported in Trulicity and Ozempic patients, they do not mention NAION as a risk of taking Trulicity and Ozempic, nor do they disclose NAION as a chronic condition that can result as a consequence of taking Trulicity and Ozempic.

285. Defendants' promotional websites for Trulicity and Ozempic similarly do not disclose that Trulicity and Ozempic is causally associated with increased risk of NAION.

286. Defendants' omissions and concealment of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician(s), and adult weight loss patients, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Trulicity and Ozempic to aid weight loss.

287. Defendants knew or should have known that Plaintiff's prescribing physician(s)

would prescribe, and Plaintiff would use, Trulicity and Ozempic without the awareness of the risks of serious side effects, including NAION and its sequelae.

288. Defendants knew that Plaintiff and Plaintiff's prescribing physicians(s) had no way to determine the truth behind Defendants' misrepresentations and concealments surrounding Trulicity and Ozempic, as set forth herein.

289. Upon information and belief, Plaintiffs prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to dispense, provide, and prescribe Trulicity and Ozempic.

290. Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risk of NAION causally associated with Trulicity and Ozempic, they would not have prescribed Trulicity and Ozempic and/or would have provided Plaintiff with adequate information regarding the increased risk of NAION causally associated with Trulicity and Ozempic to allow Plaintiff to make an informed decision regarding Plaintiff's use of Trulicity and Ozempic.

291. Upon information and belief, had Plaintiff's prescribing physician(s) been told that Trulicity and Ozempic had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae, they would not have prescribed Trulicity and Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Trulicity and Ozempic to allow Plaintiff to make an informed decision regarding Plaintiff's use of Trulicity and Ozempic.

292. Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to purchase and/or consume Trulicity and Ozempic.

293. Had Plaintiff been informed of the increased risks causally associated with Trulicity and Ozempic, Plaintiff would not have used Trulicity and Ozempic and/or suffered NAION and its sequelae.

294. Defendants' fraudulent concealments were a substantial factor in causing Plaintiff's injuries.

295. As a direct and proximate result of the above stated omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including NAION and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

296. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SIXTH CAUSE OF ACTION
## FRAUDULENT MISREPRESENTATION
## AGAINST ALL DEFENDANTS

297. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in paragraphs 1 through 165, with the same force and effect as if more fully set forth herein.

298. At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Trulicity and Ozempic, which were used by Plaintiff as hereinabove described.

299. At all relevant times, Defendants knew or should have known that Trulicity and Ozempic had not been adequately and/or sufficiently tested for safety.

300. At all relevant times, Defendants knew or should have known of the serious side effects of Trulicity and Ozempic, including NAION and its sequelae.

301. At all relevant times, Defendants knew or should have known that Trulicity and Ozempic were not safe to aid weight loss, given its increased risk of NAION.

302. Nonetheless, Defendants made material misrepresentations to Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community at large, and the general public regarding the safety and/or efficacy of Trulicity and Ozempic.

303. Defendants represented affirmatively and by omission on television advertisements and on the label of Trulicity and Ozempic that Trulicity and Ozempic were a safe and effective drugs to aid weight loss, despite being aware of increased risks of NAION and its sequelae causally associated with using Trulicity and Ozempic.

304. Defendants were aware or should have been aware that Defendants' representations were false or misleading and knew that they were concealing and/or omitting material information from Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community, and the general public.

305. Defendants' misrepresentations of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician(s), and adult weight loss patients, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Trulicity and Ozempic to aid weight loss.

306. Upon information and belief that Plaintiff's prescribing physician(s) had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and

omissions surrounding Trulicity and Ozempic, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff's prescribing physician(s) had no way to know were omitted.

307. Upon information and belief, Plaintiff's prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to prescribe Trulicity and Ozempic to Plaintiff.

308. Upon information and belief, had Plaintiff's prescribing physician(s) been informed of the increased risk of NAION causally associated with Trulicity and Ozempic, Plaintiff's prescribing physician(s) would not have prescribed Trulicity and Ozempic and/or would have provided Plaintiff with adequate information regarding the safety of Trulicity and Ozempic to allow Plaintiff to make an informed decision regarding Plaintiff's use of Trulicity and Ozempic.

309. Upon information and belief, had Plaintiff's prescribing physician(s) been told that Trulicity and Ozempic had not been sufficiently and/or adequately tested for safety risks, including NAION and its sequelae, they would not have prescribed Trulicity and Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Trulicity and Ozempic so that Plaintiff could make an informed decision regarding Plaintiff's use of Trulicity and Ozempic.

310. Plaintiff had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and omissions surrounding Trulicity and Ozempic, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff had no way to know were omitted.

311. Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to accept, purchase and/or consume Trulicity and Ozempic.

312. Had Plaintiff been told of the increased risk of NAION and its sequelae causally associated with Trulicity and Ozempic, Plaintiff would not have used Trulicity and Ozempic and/or suffered NAION and its sequelae.

313. Had Plaintiff been told of the lack of sufficient and/or appropriate testing of Trulicity and Ozempic for safety risks, including NAION and its sequelae, Plaintiff would not have used Trulicity and Ozempic and/or suffered NAION and its sequelae.

314. As a direct and proximate result of the above stated false representations and/or omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including NAION and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

315. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**SEVENTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**AGAINST ALL DEFENDANTS**

316. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in paragraphs 1 through 165, with the same force and effect as if more fully set forth herein.

317. At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Trulicity and Ozempic, which were used by Plaintiff as hereinabove described.

318. At all relevant times, Defendants knew or should have known that Trulicity and Ozempic had not been adequately and/or sufficiently tested for safety.

319. At all relevant times, Defendants knew or should have known of the serious side effects of Trulicity and Ozempic, including NAION and its sequelae.

320. Defendants had a duty to disclose material information about Trulicity and Ozempic to Plaintiff and Plaintiff's prescribing physician(s) that Trulicity and Ozempic is causally associated with increased risk of NAION and its sequelae, because Defendants held a special expertise with respect to Trulicity and Ozempic, Plaintiff, as a user of Trulicity and Ozempic, had a special relationship of trust with Defendants, and Defendants knew that their statements regarding the risks causally associated with Trulicity and Ozempic would be relied on by Trulicity and Ozempic users.

321. At all relevant times, Defendants knew or should have known of the serious side effects of Trulicity and Ozempic, including NAION and its sequelae.

322. Nonetheless, Defendants made material misrepresentations and omissions and/or concealments to Plaintiff, Plaintiff's prescribing physician[s], the medical and healthcare

community at large, and the general public regarding the safety and/or efficacy of Trulicity and Ozempic.

323. Defendants represented affirmatively and by omission on television advertisements and on the label of Trulicity and Ozempic that Trulicity and Ozempic were a safe and effective drugs to aid weight loss, despite being aware of the increased risks of NAION and its sequelae causally associated with using Trulicity and Ozempic.

324. Defendants were aware or should have been aware that their representations were false or misleading and/or knew that Defendants were concealing and/or omitting material information from Plaintiff, Plaintiff's prescribing physician[s], the medical and healthcare community, and the general public.

325. Defendants knew that Plaintiff and Plaintiff's prescribing physicians (s) had no way to determine the truth behind Defendants' misrepresentations and concealments surrounding Trulicity and Ozempic, as set forth herein.

326. Upon information and belief that Plaintiff's prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to prescribe Trulicity and Ozempic to Plaintiff.

327. Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risk of NAION and its sequelae causally associated with Trulicity and Ozempic, they would not have prescribed Trulicity and Ozempic and/or would have provided Plaintiff with adequate information regarding safety of Trulicity and Ozempic so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Trulicity and Ozempic.

328. Upon information and belief, had Plaintiff's prescribing physician(s) been told that Trulicity and Ozempic had not been sufficiently and/or adequately tested for safety risks, including

NAION and its sequelae, they would not have prescribed Trulicity and Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Trulicity and Ozempic so that Plaintiff could make an informed decision regarding Plaintiff's use of Trulicity and Ozempic.

329. Plaintiff reasonably relied on the false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff had no way to know were omitted.

330. Had Plaintiff been told of the increased risk of NAION and its sequelae causally associated with Trulicity and Ozempic, Plaintiff would not have used Trulicity and Ozempic and/or suffered NAION and its sequelae.

331. Defendants' misrepresentations and omissions of material facts amount to willful, wanton, and/or reckless conduct.

332. As a direct and proximate result of the above stated false representations and/or omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including NAION and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

333. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants on each of the above-referenced claims and Causes of Action and as follows:

334. Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

335. Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of Defendants, who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct;

336. Awarding Plaintiff, the costs of these proceedings; and

337. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury as to all issues.

Dated: October 26, 2026

RESPECTFULLY SUBMITTED,

*/s/ W. Cameron Stephenson*

W. Cameron Stephenson
Levin, Papantonio, Proctor, Buchanan,
O'Brien, Barr & Mougey, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502

*Attorney for Plaintiff*